MILLER and another vs. CHIPPEWA COUNTY.

*October 30 — November 20, 1883.*

CONTRACT: SETTLEMENT. *(1) When settlement may be avoided. (2) Evidence: contract of settlement construed.*

1. A party to a contract of settlement of a controversy cannot avoid it by alleging that he had a mistaken conception of its effect, without showing that he was induced to agree to it by some act of the other party which would amount to a fraud upon his rights.
2. Upon the evidence in this case (too voluminous to be here stated) it is *held* that the referee and the court below erred in their construction of a contract of settlement, and that the plaintiffs had been paid all they were entitled to under such contract.

APPEAL from the Circuit Court from *Chippewa* County. The case is stated in the opinion.

*Levi M. Vilas,* for the appellant.

For the respondents there was a brief by *Marshall & Jenkins,* and oral argument by *Mr. Marshall.*

TAYLOR, J. This action was brought by the respondents to recover of the county of Chippewa for work and labor

Miller and another vs. Chippewa County.

performed by them in building a court-house for said county, and for damages on account of an alleged breach or breaches of the contract for building the same by the said county. The defendant, by its answer, denied the allegations of the complaint, and further alleged that, after the performance of all the work claimed to have been done by the respondents, there had been a complete settlement and adjustment of all the matters and things mentioned in the complaint, and that upon such settlement the county paid to the respondents a sum of money which was received by them in full satisfaction and discharge of all debts, claims, demands, and liabilities against the county, and that upon such settlement mutual receipts were given, each to the other, in full satisfaction and payment thereof.

The case was tried by a referee. On the trial before the referee, the respondents gave evidence tending to establish at least a part of the claims set out in their complaint. The county on its part introduced evidence to prove the settlement set out in its answer. This evidence showed that the county board having the matter of the respondents' claims under consideration appointed a committee of three of their own members to investigate the subject and report to the board; that the committee and one of the respondents, who acted on behalf of both, met, and after an investigation of the whole matter the committee reported to the full board in writing as follows:

" We, the undersigned, special committee appointed by your honors on court-house, find as follows, to wit:

" To amount audited by building committee................ $42,860 00
" By amount of money received by *Miller & Laycock*....... 42,607 63
" Balance due *Miller & Laycock* on the building........... 1,951 87
" Extra work, not accepted by the building committee...... 1,699 50

" We, the undersigned, recommend that the court-house be accepted and all demands against the court-house be paid, and *Miller & Laycock* be released from their contract as

contractors; all of which is respectfully submitted to your honors, and would ask to be discharged from their laborious duties."                    [Signed by the committee.]

The report of the committee was accepted by the board, and thereupon the board adopted the following resolution: "Resolved, by the county board now in session, that the court-house be accepted and *Messrs. Miller & Laycock* be discharged as contractors (by consent of *Mr. Miller*), and that the county treasurer forthwith have the court-house insured in some responsible company or companies to the amount of $30,000."

The records of the county board then show the following proceedings:

"The following release, signed by the parties to the contract, was ordered spread on the minutes and the original placed on file:

"It is hereby mutually agreed, by and between the county board of the county of *Chippewa* and *Miller & Laycock*, that each party to the contract for the building of the courthouse be and they all are hereby released therefrom; and that all claims upon said contract against each other have been and are hereby settled and discharged.

"*Dated March 27, 1875.*          D. C. SWAN,

"Chairman of the Board of Supervisors

of *Chippewa County.*

"MILLER & LAYCOCK."

On the same day the following order was made by the board:

"Moved by L. Von Eschen that the following list of *Miller & Laycock's* indebtedness be furnished the county treasurer; that he pay the same to the parties mentioned in the list, excepting the $136.07 due *Miller & Laycock*, which he is to retain for thirty days:

| | |
|---|---|
| "E. B. Wood............................................... | $30 00 |
| "Allen & Cumming........................................ | 367 41 " |

Miller and another vs. Chippewa County.

Then follows a list of twenty-one other claims, amounting
in all to the sum of.................................... 1,418 39
The last item is, " *Miller & Laycock*...... ................ 136 07 "
                                                          $1,951 87

Being the exact sum found due to *Miller & Laycock* by the
report of the committee appointed by the board to settle
with them.

The motion of Von Eschen was adopted by the board, and
the county treasurer paid the claims mentioned in said list,
including the $136.07, which *Miller & Laycock* afterwards
drew from the treasury. There was evidence given on the
trial on behalf of the plaintiffs tending to show that *Miller*,
who acted on their behalf at this settlement, claimed that
he understood that by the report of the committee the
county was not only to pay the $1,951.87 which it did
afterwards pay, but that it was also to pay the further sum
of $1,699.50, stated in the report to be extra work not ac-
cepted by the building committee, and that he, on behalf of
the plaintiffs, notified the board, after he had executed the
release, that he so understood the report and should not con-
sider the matter settled unless that amount was also paid.
From the evidence reported in the case, we should be in-
clined to hold that no such claim was made by *Miller* at the
time he alleges it was; and his acceptance of the $136.07
afterwards is strong evidence that he did not make such
claim at the time. But, however that may be, we think it
is not material to the determination of the questions involved
in this appeal.

The referee found that the whole of the matters in dis-
pute between the parties were settled on the day claimed by
the county, and that the terms of such settlement are found
in the report of the committee and in the subsequent pro-
ceedings of the board, and that by the terms of such settle-
ment the county agreed to pay the plaintiffs the said sum of
$1,699.50, in addition to the sums it has already paid. He

does not find that the plaintiffs were misled or in any way deceived by the action of the committee or of the county board so as to entitle them to avoid the settlement. He gives judgment, however, in favor of the plaintiffs, upon his construction of the terms of the settlement agreed upon by the parties at the time, and as he interprets the settlement he finds that the county owes the plaintiffs the said sum of $1,699.50, with the interest thereon. The referee found as a matter of fact "that the committee recommended that the plaintiffs be paid the sum of $1,699.50 for extras, as well as the other sum of $1,951.87, and that the county board so understood it at the time, as shown by the testimony of the witnesses for the defendant Mr. Martin, who details some portions of the conversation between members of the board as to the allowance of so many extras," etc. The sixteenth finding of the referee is as follows: " That this is not a case of impeaching a settlement for fraud or mistake, or falsifying or surcharging accounts. No evidence of mistakes, errors, or frauds in the accounts considered by said committee of investigation was offered; but it takes the form of an action to recover the unpaid balance of the sum found due said plaintiff upon and according to said settlement." And he finally renders judgment in favor of the plaintiffs for the said sum of $1,699.50, with interest, as due to them from the county upon such settlement. This finding and judgment were affirmed by the circuit court. To such finding and judgment exceptions were properly taken by the defendant county, and an appeal is taken to this court.

It will be seen from the record that notwithstanding the plaintiffs' complaint was on account for work and labor done for the defendant, and for damages they had sustained by the alleged breaches of contract on the part of the defendant, they were allowed to recover a balance which the court found due to them upon an alleged accounting and settlement with the defendant. As the defendant put in evidence

the settlement and accounting as a defense to the plaintiffs' claims, there would be, perhaps, no injustice done to the defendant by allowing the plaintiffs to recover any balance which was found due to them upon such settlement, in case the court found there had been a settlement. In such case the court might allow the plaintiffs to amend their complaint and claim upon the settlement, or perhaps treat the complaint as amended and enter judgment in their favor for the amount so found due on such settlement.

We agree with the learned referee and the circuit court that the settlement made in this case has not been impeached by any evidence showing fraud or mistake of the parties to the same, and that if the plaintiffs can recover at all in this action they must recover upon the terms of the settlement; and if the evidence establishes the fact that the plaintiffs have been paid all that is due them by its terms, then they cannot recover, and the judgment of the circuit court must be reversed. Upon a full consideration of the report of the committee, and the action of the board and the plaintiffs thereon, it appears to us that the referee has clearly misconstrued the report and the action of the parties thereon. The report of the committee shows that there had been audited by the building committee to the plaintiffs for work done, etc., $42,860; that of the sum so audited the plaintiffs had been paid $42,607.63. They then say that the balance due *Miller & Laycock* on the building is $1,951.87; that there was extra work, not accepted by- the building committee, $1,699.50. It will be seen by an examination of this report that the amount found due to the plaintiffs, and which the committee recommend shall be paid, viz., $1,951.87, is made up of two sums,— first, the difference between the amount audited by the building committee, $42,860, and the amount theretofore paid, viz., $42,607.63, which is $252.37; and the sum of the extras not allowed by the building committee, viz., $1,699.50. These two sums added together make the

exact sum to a cent as the sum which the committee report as due to the plaintiffs, and which they recommend should be paid.

That there was no intention of paying the sum of $1,699.50 for extras over and above the sum found due to the plaintiff, viz., $1,951.87, is very clear on the face of the report. There is nothing in the report which justifies the finding made by the referee, that the committee found there was "$1,951.87 due the plaintiffs, according to the terms of the contract between the parties," as the whole evidence shows that the plaintiffs had already been paid several thousand dollars more than the contract called for, for extra work on the building. It is clear, whatever they found due the plaintiffs on this investigation must have been found due to them for extras, as stated in the report. What took place after the report was made confirms the construction which we think this report must receive. Accompanying the report was a statement of claims against the plaintiffs by third parties, for work and materials furnished to them in the construction of the court-house, and which it was agreed the county should pay on behalf of the plaintiffs, in part settlement of the amount which the county agreed to pay the plaintiffs on the settlement, and at the end of this list of claims is added the sum of $136.07 to be paid to *Miller & Laycock;* and it will be seen that by the adding of the $136.07 to this list of claims, we have again the exact sum of $1,951.87, the amount the committee found due to the plaintiffs. The correctness of this construction of the terms of the settlement is confirmed by the fact that subsequently the plaintiffs drew from the county treasury the sum of $136.07, the sum which made the exact balance of $1,951.87, when added to the amount of the other claims paid by the county. The claim now made by the plaintiffs that they did not so understand the report, and that *Miller* made objections before the board on the same day the settlement

Miller and another vs. Chippewa County.

was made and the release signed, that they had not fairly construed the terms of the settlement, and that he should not abide by their construction of its terms, is not supported by any very satisfactory evidence, and is in direct conflict with his action in receiving from the county the exact balance it claimed was due to him on such settlement afterwards without any protest.

But as the learned referee and the circuit court have held that there was no mistake or fraud in the settlement, it would be immaterial, if it were a fact, that, after it was made and agreed upon, one of the plaintiffs had notified the board that he did not understand its terms as the board did, and that he should not abide by it.

It is very clear that the county board construed the contract of settlement as we think it should be construed, and have paid all it agreed to pay, according to the rightful construction of its terms, and if the plaintiffs did not so understand it, it was not the fault of the county board. Having assented to it at the time, they must be held to have agreed to its terms, and they cannot be permitted to avoid the effect of the contract of settlement by alleging that they had a mistaken conception of its effect, without showing, at least, that they were induced to sign the contract by some acts of the county board which would amount to a fraud upon their rights.

It is very clear to us that the construction given to the contract of settlement by the referee and the circuit court was erroneous, and that the evidence shows that the county has paid to the plaintiffs all that is due to them upon such settlement.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to the circuit court to enter a judgment dismissing the complaint.