ONALASKA ELECTRICAL HEATING, INC., Plaintiff-Respondent, v. SCHALLER, Defendant-Appellant.

Supreme Court

*No. 77–300. Submitted on briefs February 7, 1980.—Decided March 4, 1980.*
(Also reported in 288 N.W.2d 829.)

494

For the appellant the cause was submitted on the brief of *William J. Sauer* of La Crosse.

For the respondent the cause was submitted on the brief of *Roger W. LeGrand* of La Crosse.

CONNOR T. HANSEN, J.  On November 5, 1976, Onalaska Electrical commenced an action against Robert A. Schaller on an account stated.  In its brief complaint, Onalaska Electrical alleged that it and Schaller had engaged in certain business transactions and on September 30, 1975, they agreed to the balance resulting therefrom; that Onalaska Electrical rendered a statement thereof and Schaller did not object to it; and that the amount of $14,852.54 was due and owing from Schaller on the account stated.  The answer of Schaller was a general denial of the allegations of the complaint that set forth a cause of action on an account stated.

The issues on appeal relate to alleged trial court error in limiting the admission of evidence to that which concerned the question of whether the parties had in fact entered into a contract of an account stated.

Schaller was a developer of various business enterprises and over a period of years Onalaska Electrical had

done considerable work for Schaller on different projects. Onalaska Electrical kept ledger cards on the various projects and periodically sent Schaller invoices or statements.

As of April 29, 1974, the account was paid in full. Subsequent to this date, in June, 1974, Schaller requested that Onalaska Electrical send him statements containing a more detailed breakdown of the charges for labor and materials. Such statements were sent to him for each of three projects in progress and in the latter half of 1974. Payments continued to be made on the account after April 29, 1974, but arrearages began to accumulate. Finally, in January of 1975, Onalaska Electrical ceased to do any work for Schaller. At that time, the ledger kept by Onalaska Electrical showed a balance of $23,096.28 due from Schaller on the various projects then in progress.

After January, 1975, Robert Whiteman, the president and sole stockholder of Onalaska Electrical, made many attempts to get the account paid. All parties agree that in June or July, 1975, Robert Whiteman, Gladys Hockenberry, bookkeeper for Onalaska Electrical, and Schaller and his wife held a final meeting to discuss settlement of the account.[1]

There is a conflict between the parties as to what transpired at this June or July, 1975, meeting. Based upon the testimony of the parties, evidence presented, and reasonable inferences to be drawn therefrom, the trial court found that the parties had entered into an account stated at this meeting, and judgment was entered accordingly.

At this meeting Schaller, among other things, complained about a 10 percent add-on to the cost of equipment furnished by Onalaska Electrical and an increase

[1] During the trial the court granted the motion of Onalaska Electrical to amend the complaint to allege that the meeting of the parties took place in June or July, 1975, rather than on September 30, 1975, as alleged in the complaint.

in labor charges. As a result, Onalaska Electrical agreed to discount certain items from the $23,096.28 which was due according to their ledgers. After making certain adjustments, the figure of $13,141.91 was presented to Schaller, and Whiteman and Hockenberry both testified that the parties agreed that the balance due on the account was $13,141.91. They testified that a statement of the account showing the adjustments was given to Schaller and that he promised to pay the account in the amount agreed upon. A couple of months later Onalaska Electrical commenced sending Schaller statements for the amount agreed upon plus an additional monthly interest charge. They continued to send Schaller these monthly statements until this action was commenced in November, 1976.[2] After the meeting Schaller never responded to the statements sent to him or made any payments on the account.

Schaller and his wife, Irene Schaller, testified that a final meeting was held in June or July of 1975 in an attempt to get the account settled, and that figures were discussed. They denied, however, that an agreement regarding the account was reached at that meeting. They testified that the statement of the account showing a balance due of $13,141.91 was not presented to them at the meeting, but it was sent to them by mail within 10 days or two weeks after the meeting.

The trial court found that an agreement was reached between the parties to settle the account at $13,141.91, and made its findings of fact and conclusions of law, the pertinent portions of which are:

"FINDINGS OF FACT
". . . .

---

[2] When entering judgment the trial court disallowed the monthly addition of interest. This holding was based upon the fact that the past relationship of the parties showed that such was not the accepted practice of the parties. No issue is made of this holding on appeal.

"3.) That the parties entered into an agreement for the electrical work on the home and project of defendants and that invoices were sent to the defendant for the labor and material which was incurred as the project progressed.

"4.) That invoices which had been submitted to the defendant had been paid as of April 29, 1974.

"5.) That in June or July of 1975, the account according to plaintiff's books had a balance of $23,096.28.

"6.) That in June or July of 1975, there was a meeting between plaintiff and defendant and an agreement or means of reaching agreement was agreed upon by the parties.

"7.) That adjustments made to the account by plaintiff come close to the amount defendant contends he was overcharged.

"8.) That the agreement reached at the June or July meeting was reduced to an invoice which is exhibit '10' in the record. That within 10 days or two weeks following the meeting a copy of exhibit '10' was mailed to defendant.

"9.) That no interest had been charged to defendant prior to the exhibit '10' invoice.

"CONCLUSIONS OF LAW

"1.) That an agreement was reached by the parties in June or July of 1975, to compromise their account at $13,141.91.

"2.) That plaintiff is entitled to judgment against defendant in the amount of $13,141.91 with interest at the legal rate from October 30, 1975, plus the costs and disbursements of the action."

Judgment was thereupon entered awarding Onalaska Electrical damages in the amount of $13,141.91, together with interest, costs and disbursements, in the total amount of $14,522.52.

On appeal, Schaller presents three issues: (1) Did the trial court err in excluding certain evidence, (2) was there sufficient evidence to prove the existence of an account stated, and (3) should a new trial be granted in the interest of justice?

Schaller first argues that the trial court abused its discretion by restricting the evidence to the issue of whether the parties had in fact struck a balance and thereby entered into a contract, either express or implied, on an account stated.[3] It is the position of Schaller that the trial court committed prejudicial error when it excluded evidence which reflected on the quality of the workmanship and reasonableness of the charges by Onalaska Electrical on some of the projects. The trial court held that such evidence was irrelevant to the issues in an action on an account stated, and stated that the issue as framed by the pleadings was whether the parties had reached an agreement as to the balance due from Schaller. The court also stated that since the only cause of action was on an account stated, and there was no alternative cause of action pled, such as quantum meruit, and that because Schaller did not allege a counterclaim or affirmative defense, the evidence he sought to introduce was irrelevant to the issue before the court. We believe the trial court was correct when ruling on this issue. The issue before the trial court was whether the parties had struck a balance by mutual agreement on their disputed claims and thereby established an account stated.

In *Estate of Vicen*, 1 Wis.2d 193, 199, 83 N.W.2d 664 (1957), this court held that:

". . . An account stated is an agreement between debtor and creditor that the items of the transaction between them are correctly stated in a statement rendered, that the balance shown is owing by the one party to the other, and that the one promises to pay that balance to the other. *Wussow v. Badger State Bank* (1931), 204 Wis. 467, 476, 234 N.W. 720, 236 N.W. 687."[4]

---

[3] 15 Williston, *Contracts* (3d ed.), sec. 1862, p. 564; 6 Corbin, *Contracts*, sec. 1306, p 243.

[4] *See also: Estate of Tinker*, 227 Wis. 519, 525, 279 N.W. 83 (1938); *Preston v. La Belle View Corp.*, 192 Wis. 168, 172, 173, 212 N.W. 286 (1927).

Relevant evidence is evidence which has a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Sec. 904.01, Stats. thus, evidence which is relevant in an action on an account stated is evidence which tends to show whether or not an agreement as to the balance due was reached between the parties, whether one party, either expressly or impliedly, promised to pay the balance, and whether the balance remains unpaid. An action on an account stated is an action on the new contract by and under which the parties have adjusted their differences, and not upon the original dealings and transactions of the parties. 1 C.J.S., *Account Stated,* p. 740, sec. 58. It is the balance agreed upon, and not the constituent items, that constitutes a cause of action on an account stated. 1 Am. Jur. 2d, *Accounts and Accounting,* p. 412, sec. 37. Therefore, the evidence which Schaller sought to introduce to show that the quality of some of the electrical work was poor and that the labor costs for the electrical work were unreasonable, was not relevant to the instant action. These types of disputes between the parties were settled, if in fact the parties agreed to a balance due on the disputed claims and the agreement became the basis for an action on account stated as alleged by Onalaska Electrical. The alleged account stated, based upon the settlement of a disputed account, constituted a new and express or implied contract between the parties. *Hawley v. Harran,* 79 Wis. 379, 382, 48 N.W. 676 (1891). It has been held that an account stated presumptively establishes the claim of the plaintiff, and the presumption cannot be overcome unless fraud or mistake is shown. *Preston v. La Belle View Corp.,* 192 Wis. 168, 173, 212 N.W. 286 (1927).

Evidence as to whether the charges of Onalaska Electrical were reasonable and the workmanship of poor

quality was not relevant to the issue of whether there was an account stated. Thus the trial court did not err in excluding evidence relating to defective workmanship or the unreasonableness of labor charges.

Schaller now contends that he should have been allowed to amend his pleadings at the trial. The record reflects that he never requested or moved to amend his pleadings either before, during or after the trial. Thus, any issue concerning amendment of pleadings is not properly before this court.

Schaller next contends that the evidence was insufficient to sustain the finding of the trial court that the parties reached an agreement on an account stated.

In the case before us there is a conflict between the parties. Onalaska Electrical claims the parties had struck a balance on their disputed account at the June or July, 1975, meeting and that there was an account stated. Schaller, on the other hand, denies the existence of an account stated. This case was tried to the court. It is well established that when the trial judge acts as the finder of fact, he is the ultimate arbiter of the credibility of the witnesses when there is a conflict in the testimony, and his findings will be sustained unless they are against the great weight and clear preponderance of the evidence.[5] Also when more than one reasonable inference can be drawn from the evidence, this court is obliged to support the finding made by the trial court.

This court has held that if one party holds an account against another, and a statement of the account is made

---

[5] *Cogswell v. Robertshaw Controls Co.*, 87 Wis.2d 243, 250, 274 N.W.2d 647 (1979); *Bank of Sun Prairie v. Opstein*, 86 Wis.2d 669, 676, 273 N.W.2d 279 (1979); *Gehr v. Sheboygan*, 81 Wis.2d 117, 122, 260 N.W.2d 30 (1977); *Gerner v. Vasby*, 75 Wis.2d 660, 662–664, 250 N.W.2d 319 (1977).

showing the amount due, and the statement is admitted by the other party to be correct, and there is a promise, either actual or implied, to pay the same, it amounts to an account stated. *Estate of Vicen, supra,* at 199. An account stated presupposes an acknowledgement of a certain sum due, or an adjustment of accounts between the parties, the striking of a balance, and an assent, express or implied, to the correctness of the balance. *Id.*

In this case both Robert Whiteman and Gladys Hockenberry testified that they met with Schaller and his wife in June or July of 1975 to discuss a final settlement of the Schaller account. The ledger account of Onalaska Electrical reflects the balance on the account was $23,096.28. Certain adjustments were made to the account, and Schaller was presented with a statement making allowances for the adjustments and showing a balance due of $13,141.91. It was their testimony that all parties agreed that $13,141.91 was the balance due and that Schaller promised to pay the amount so agreed upon.

Schaller and his wife acknowledged that this meeting took place and that an effort was made to settle the account. They denied that an agreement was reached as to the balance; however, they admitted receiving a statement about 10 days after the meeting showing the balance due on the account to be $13,141.91.

A month or two after the meeting, Onalaska Electrical commenced sending Schaller monthly statements with an add-on monthly finance charge.[6] Onalaska Electrical continued to mail Schaller these monthly statements until this action was commenced in November, 1976. There is no evidence that Schaller ever objected to these statements of the account. In an action on an account stated

---

[6] The trial court disallowed the monthly add-on finance charge, holding that the record did not establish that such was the usual practice of Onalaska Electrical.

the retention of a statement of an account by a party without making an objection thereto within a reasonable time is evidence of acquiescence in or assent to the correctness of the account. *Preston v. La Belle View Corp.,* *supra,* at 173; *Ott v. Cream City Sand Co.,* 166 Wis. 228, 233, 164 N.W. 1005 (1917); *Ripley v. Sage L. & I. Co.,* 138 Wis. 304, 308, 309, 119 N.W. 108 (1909).

15 Williston, *Contracts* (3d ed.), sec. 1863, p. 570, states:

"It is not essential that the account shall be stated in any particular form. Any evidence indicating an admission by the debtor to the creditor of the stated indebtedness claimed by the latter will furnish ground for an implied promise.

"Evidence of assent to an account stated may consist of expressed statements or of inferences from conduct. Especially, it is held that the retention of a statement of account without objection for more than a reasonable time implies assent to its correctness."

From our examination of the record, we conclude the findings and conclusions of the trial court are supported by credible evidence and reasonable inferences to be drawn therefrom, and that it cannot be held that they are against the great weight and clear preponderance of the evidence.

Finally, Schaller contends we should grant a discretionary reversal as provided in sec. 251.09, Stats. 1975. This we decline to do. Upon reviewing the record as a whole, we are not convinced that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried.

*By the Court.*—Judgment affirmed.